# 23-365

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUT

―――――――――――――――――――

JASON FREY, BRIANNA FREY, JACK CHENG, WILLIAM SAPPE,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY, NEW YORK, KEECHANT SEWELL, in her Official Capacity, STEVEN NIGRELLI, in his Official Capacity,

*Defendants-Appellees,*

KEVIN P. BRUEN, Acting Superintendent of the New York State Police, in his Official Capacity, DERMOT SHEA, in his Official Capacity as NYPD Police Commissioner,

*Defendants.*

―――――――――――――――――――

On Appeal from the United States District Court
for the Southern District of New York

―――――――――――――――――――

### APPELLANTS' OPPOSITION TO EVERYTOWN FOR GUN SAFETY'S MOTION TO FILE AN AMICUS CURIAE BRIEF

―――――――――――――――――――

Amy L. Bellantoni
The Bellantoni Law Firm, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

October 6, 2023

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. i

Brief Summary of the Appeal ............................................................................. 1

Standard for Considering Leave to File Amicus Brief ....................................... 2

I. Everytown Helped Draft the Laws Challenged by Appellants ..................... 4

II. Everytown Failed to Inform This Court of Its Direct Interest in the Outcome of This Appeal and the Case Below ........................................... 6

III. Public Safety is Not A 'New Societal Concern' – And Was Flatly Rejected By The Supreme Court As A Justification For Firearm Regulations ................ 6

IV. Everytown's Ideas Conflict With Supreme Court Jurisprudence ................ 8

V. The *Bruen* Plaintiffs Do Not Speak For Appellants .................................. 10

VI. Everytown Urges Substitution of the *Bruen* Test With The "*Everytown Test*," Which Cannot Be Entertained By This Court ................. 11

VII. Appellees Are Well-Represented and Have No Need for 'Assistance' ........ 14

CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*,
  2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) ...................................... 3, 4

*Crawford v. Washington*,
  541 U.S. 36 (2004) ............................................................................. 8

*D.C. v. Heller*,
  554 U.S. 570 (2008) ........................................................................... 7

*Dred Scott v. Sandford*,
  19 How. 393, 15 L.Ed. 691 (1857) .................................................. 10

*King v. Amazon.com Servs. LLC*,
  2022 WL 17083273 (E.D.N.Y. Nov. 18, 2022) ................................. 15

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) ........................................................................... 7

*N. Sec. Co. v. United States*,
  191 U.S. 555 (1903) ........................................................................... 3

*Nat'l Org. for Women, Inc. v. Scheidler*,
  223 F.3d 615 (7th Cir. 2000) ......................................................... 2, 14

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ........................................................................... 8

*Picard v. Greiff*,
  797 F. Supp. 2d 451 (S.D.N.Y. 2011) ................................................ 4

*Rogers v. Grewal*,
  140 S. Ct. 1865, 207 L. Ed. 2d 1059 (2020) ................................... 14

*Ryan v. C.F.T.C.*,
  125 F.3d 1062 (7th Cir. 1997) ........................................................... 2

*Strasser v. Doorley*,
  432 F.2d 567 (1st Cir. 1970) .................................................................................. 3, 4

*U.S. v. Microsoft Corp.*,
  2002 WL 319139 (D.D.C. Feb. 28 2002) ............................................................. 2

*United States v. Gotti*,
  755 F. Supp. 1157 (E.D.N.Y. 1991) ...................................................................... 4

*United States v. Yaroshenko*,
  86 F. Supp. 3d 289 (S.D.N.Y. 2015) ..................................................................... 3

*Virginia v. Moore*,
  553 U.S. 164 (2008) ............................................................................................. 8

**Rules**

Federal Rule of Appellate Procedure 29 ..................................................................... 2

Plaintiffs-Appellants oppose the motion of Everytown For Gun Safety ("Everytown") requesting leave to file a brief as amicus curiae in support of Defendants-Appellees.

Everytown was directly involved in drafting the statutes challenged by Appellants, failed to disclose to this Court its interest in the outcome of this case, advocates for the application of unsound legal principles to contravene *Heller, McDonald,* and *Bruen*, and urges this Court to accept historical analysis and conclusions that contradict well-established Supreme Court jurisprudence. Everytown is no 'friend of the Court' and its motion should be denied in its entirety.

### *Brief Summary of the Appeal*

This an interlocutory appeal challenges the district court's denial of Appellants' motion to preliminarily enjoin New York State firearm regulations that conflict with the text, history, and tradition of the right to possess and carry weapons for self-defense, as protected by the Second Amendment.

Specifically, Appellants challenge provisions of the Concealed Carry Improvement Act (CCIA) that **ban the right to peaceably carry firearms** for self-

1

defense in Times Square[1], the MTA subway and train cars[2], in public parks[3], theaters[4], and restaurants with on-premise alcohol consumption[5].

Appellants also challenge New York's **ban on the open carriage of handguns** and the ***geographical ban*** for individuals with NYS concealed handgun licenses to carry concealed inside of New York City (the "City").[6]

### *Standard for Considering Leave to File Amicus Brief*

Federal Rule of Appellate Procedure 29 permits the filing of an amicus brief only by leave of court where one or more parties does not consent to its filing.

Appellants do not consent to the filing of Everytown's amicus brief.

"In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, [ ] judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal." *U.S. v. Microsoft Corp.*, No. 98-1232(CKK), 2002 WL 319139, at *3 (D.D.C. Feb. 28 2002) (quoting *Ryan v. C.F.T.C.*, 125 F.3d 1062, 1064 (7th Cir. 1997)).

Although judges have wide discretion to permit a nonparty to submit an amicus brief, see *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th

---

[1] Penal Law § 265.01-e2(t).
[2] Penal Law § 265.01-e2(n).
[3] Penal Law § 265.01-e2(d).
[4] Penal Law § 265.01-e2(p).
[5] Penal Law § 265.01-e2(o).
[6] Penal Law § 400.00(6).

2

Cir. 2000), courts "should go slow in accepting" an amicus brief absent consent from all the parties. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); see also *N. Sec. Co. v. United States*, 191 U.S. 555, 556 (1903) (Fuller, C.J., in chambers).

Following the Seventh Circuit, the Southern District of New York has put forth a useful litmus test for when an amicus brief is useful: (i) when they are of aid to the court and offer insights not available from the parties; (ii) when a party is not represented competently or is not represented at all; (iii) when the amicus has an interest in some other case that may be affected by the decision in the present case; or (iv) when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (cases cited).

Otherwise, leave to file an amicus curiae brief should be denied. *Id.*

An amicus curiae proves true to its name as a "friend of the court" when it offers a fresh perspective on an unsettled question of law that the actual parties to the litigation have not fully addressed. *United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290–91 (S.D.N.Y. 2015).

The proposed Amicus Brief of Everytown for Gun Safety meets none of these standards.

As Chief Judge Aldrich cautioned in *Strasser v. Doorley*, it "may be thought particularly questionable" for the court to accept an amicus when it appears that the parties are well represented and that their counsel do not need supplemental assistance and where the joint consent of the parties to the submission by the amicus is lacking. That observation is precisely applicable here. *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991) quoting, *Strasser v. Doorley*, 432 F.2d 567 (1st Cir. 1970).

**I. Everytown Helped Draft the Laws Challenged by Appellants**

While there is no requirement that amici be totally disinterested, "the partiality of an amicus is a factor to consider in deciding whether to allow participation." *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011); accord, *Auto. Club* at *2.

Far from seeking to serve as an objective, neutral, dispassionate "friend of the court" [7] Everytown for Gun Safety is advocating for the justification of regulations it was involved in drafting.[8]

At her August 31, 2022 press conference touting the newly passed Concealed Carry Improvement Act (CCIA), Governor Hochul lauded Senior Counsel for

---

[7] *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991).
[8] Accepting an amicus brief from Everytown would be no different than accepting a brief from Gov. Hochul herself. Everytown's purpose is to overwhelm the Court with the same arguments, rather than provide a different or neutral perspective.

4

Everytown for Gun Safety and Deputy Chief counsel for Gifford Law Center – who were in attendance.[9]

Gov. Hochul described that during the year leading up to the Supreme Court's decision in *NYSRPA v. Bruen*, 142.S.Ct 211 (2022), legal counsel for Everytown Gifford were "Advocates" and "very helpful in the <u>whole process of writing legislation that we believe is responsive to the Supreme Court decision' in *Bruen*</u>"[10] (the CCIA) (emphasis added). Gov. Hochul further acknowledged that Everytown has been involved in "many other initiatives" by New York State on gun related legislation.[11]

In the presence of Everytown's counsel, Gov. Hochul characterized *Bruen* as a "misguided decision"[12] by the Supreme Court and promised to continue to "fight back" "as a result of the Supreme Court decision" in *Bruen*.[13]

Everytown is inextricably intertwined with New York State. Granting its motion is no different than awarding the State an opportunity to file an *additional* responsive brief. Everytown's motion to file an amicus brief should be denied.

---

[9] August 31, 2022 press conference by New York State Gov. Kathleen Hochul, https://www.youtube.com/watch?v=gC1L2rrztQs (1:49).
[10] August 31, 2022 press conference by New York State Gov. Kathleen Hochul, https://www.youtube.com/watch?v=gC1L2rrztQs (1:49).
[11] https://www.youtube.com/watch?v=gC1L2rrztQs (2:05).
[12] https://www.youtube.com/watch?v=gC1L2rrztQs (29:25).
[13] https://www.youtube.com/watch?v=gC1L2rrztQs (14:13).

## II. Everytown Failed to Inform This Court of Its Direct Interest in the Outcome of This Appeal and the Case Below

How can Everytown be a 'friend to the Court' when it hid the fact that it was directly involved in drafting the CCIA? Everytown's direct interest in the outcome of this appeal and the litigation below renders any 'assistance' from Everytown improper; and its failure to disclose such interest to the Court renders its submissions suspect.

## III. Public Safety is Not A 'New Societal Concern' – And Was Flatly Rejected By The Supreme Court As A Justification For Firearm Regulations

The underlying theme pressed by Everytown to justify the challenged firearm bans is *public safety*. The post-ratification laws they cite are all rooted to the concept of *public safety*.

But *public safety* justifications in Second Amendment challenges have been flatly rejected. This Court will find no benefit from supplemental briefing on that issue.

Modern societal concern about public safety are the same concerns that the drafters encountered when ratifying the Second Amendment in 1791.[14]

---

[14] "Like that dissent in *Heller*, the real thrust of today's dissent is that guns are bad and that States and local jurisdictions should be free to restrict them essentially as they see fit. That argument was rejected in *Heller*, and while the dissent protests that it is not rearguing *Heller*, it proceeds to do just that. *Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun….Today, unfortunately, many Americans have good reason to fear that they will be victimized if they are unable to protect themselves. And today, no less than in 1791, the Second Amendment guarantees their right to do so." *Bruen*, at 2160–61 (Alito, J. concurring).

6

Public safety considerations were balanced – and rejected in favor of the individual right to possess and carry Arms, which "shall not be infringed."

> The Second Amendment is the very product of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense.
>
> It is this balance—struck by the traditions of the American people—that demands our unqualified deference.

*Bruen*, at 2131 quoting, *D.C. v. Heller*, 554 U.S. 570, 635 (2008) (cleaned up).

*Heller* rejected the view that 'guns are bad so State and local jurisdictions should be free to restrict them essentially as they see fit.' *Bruen*, at 2160–61 (Alito, J. concurring) (cleaned up). "*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun….Today, unfortunately, many Americans have good reason to fear that they will be victimized if they are unable to protect themselves. And today, no less than in 1791, the Second Amendment **guarantees their right to do so**." *Id.* (emphasis added).

In *McDonald*, the Supreme Court observed that "the right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 783 (2010) (citing cases).

7

Everytown's public safety based arguments are improper and of no value to this Court's consideration of this Second Amendment challenge.

**IV. Everytown's Ideas Conflict With Supreme Court Jurisprudence**

Everytown is attempting to lead the Court down a legally unsound path that conflicts with Supreme Court jurisprudence concerning the interpretation of the meaning of Bill of Rights provisions.

The scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right ***when the Bill of Rights was adopted in 1791***. *Bruen*, at 2137-38 (emphasis added) (citing *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); and *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment)).

Everytown admits that *Bruen* patently "rejected the possibility of different standards for the state and federal governments"[15] and fails to cite any Supreme Court case that looked to 1868 as the primary source for determining the meaning of the Bill of Rights provisions.

But because the unyielding weight of the original meaning in 1791 suffocates its anti-gun agenda, Everytown pushes this Court toward a "weight[less] authority and analysis" that runs contrary to every Supreme Court decision involving the

---

[15] Proposed Br. at p.9-10, n.7.

8

determination of the Bill of Rights. Positing that "originalists must choose one period or the other" Everytown decided – contrary to Supreme Court jurisprudence - that 1868 alone determines the scope of the Second Amendment.[16]

There is no Supreme Court case supporting the idea that the Bill of Rights has one meaning when applied to the federal government (1791) and some watered-down and different meaning when enforced against the states (1868) – particularly considering that the 14th Amendment was passed to *ensure the equality of rights*.

To be sure, the Fourteenth Amendment brought blacks into the fold of "the People" for whom the Constitution was drafted and ratified – it did not *reduce everyone's* rights to equal those of the freed slaves (who had none).[17]

An honest reading of *Bruen* reveals the topic is closed. "The belated innovations of the mid- to late-19th-century courts come too late to provide insight into the meaning of the Constitution in 1787." *Bruen*, at 2137 (citation omitted) (cleaned up).

---

[16] Two of Everytown's 'authorities' (Blackman and Shapiro) theorize that "1868 is the correct focus for cases against a state and 1791 is correct for cases against the federal government." This fantastical idea has absolutely no basis in Supreme Court jurisprudence and is so legally unsound one has to wonder if it was proffered as a spoof.

[17] "When the people adopted them" has the same meaning in 1791 as it does in 1868 – human rights do not change over time. They are *preexisting* and guaranteed. Blacks have human rights and had them pre-civil war. The fact that other people ignored those rights – as Everytown would have this Court ignore the right to keep and carry arms for self-defense – changes nothing. It only continues the lie. [See, Proposed Br. at 14-15].

9

And when a regulation conflicts with the plain text of the Second Amendment, "the text controls." *Bruen*, at 2137. Full stop.

## V. The *Bruen* Plaintiffs Do Not Speak For Appellants

Everytown improperly attempts to attribute statements from counsel for the *Bruen* plaintiffs at oral argument before the Supreme Court to Appellants.[18] Appellants do not take the position that "where a state regulation is challenged, the court should look to 1868 – we oppose the idea altogether.

"The People" of this Nation adopted the Constitution in 1791 – every state had input and the Bill of Rights was put to a vote. Territories that later became states did so with the knowledge of the Constitution and its protections. And when the Fourteenth Amendment was ratified, it was also put to a vote of the states and was passed.[19]

The Fourteenth Amendment bestowed *every right* protected by the Constitution upon blacks – all "privileges and immunities [enjoyed by all other] citizens, including the right to keep and carry arms *wherever they went*." *Bruen*, at 2150-51 citing, *Dred Scott v. Sandford*, 19 How. 393, 15 L.Ed. 691 (1857) (emphasis supplied).

---

[18] Proposed amicus brief at 8.
[19] https://origins.osu.edu/milestones/july-2018-150-years-fourteenth-amendment?language_content_entity=en

10

*Bruen* rejected the theory pressed by Everytown, and reiterated that "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137.

*Bruen* merely acknowledged (then disregarded) the 'scholarly debate' Everytown presses this Court to adopt.[20]

In Everytown's world, the People live in some two-tiered system where 'preexisting,' 'individual,' 'guaranteed' rights mean one thing when violated by the federal government but something different (and less) when violated by the states – leaving state and local governments wide berth to trample and oppress its citizens. A silly and sophomoric idea.

## VI. Everytown Urges Substitution of the *Bruen* Test With The "*Everytown Test,*" Which Cannot Be Entertained By This Court[21]

Everytown continued to lead the Court far afield of the text, history, and tradition analysis of *Heller, McDonald,* and *Bruen*. It ignores settled law - - and urges this Court to do the same.

---

[20] "We need not address this issue today because, as we explain below, the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry." *Bruen*, at 2138.

[21] Ironically, Everytown cites Appellants as having "hubris" for looking at 1791 and adhering to the historical analysis conducted by the Supreme Court, while it disregards the Supreme Court and constitutional jurisprudence entirely in favor of creating a new test that furthers its anti-human rights agenda. Proposed Br. at 16.

11

The *Bruen* Court had "little difficulty" concluding that the plain text of the Second Amendment protects carrying handguns publicly for self-defense. *Bruen*, at 2134. Appellants' conduct -- carrying handguns publicly for self-defense -- is presumptively protected by the plain text.

Yet Everytown urges defiance of Supreme Court law, pressing this Court to reach the opposite conclusion. ["Plaintiffs' challenge therefore fails at *Bruen*'s first step and this Court need not proceed to the historical analysis."].[22]

Everytown's radical agenda carries over into the second part of the *Bruen* test. Standing *Bruen* on its head, Everytown urges adoption of the "*Everytown Test*," where Appellants[23] must (1) "justify forcing on the states a 1791 understanding of the right to keep and bear arms that the 1868 generation did not share when they bound the states to respect that right"[24] and (2) must also come forward with "affirmative evidence that the founding generation (or any other generation) would have considered the sensitive-place and licensing restrictions at issue here to be unconstitutional." [25]

Appellants have no such burden under the *Bruen* test -- or any other test.

---

[22] Proposed Br. at 3, n. 2.
[23] Everytown's inability to present neutral historical information is further revealed in its direct attack on Appellants. See, Proposed amicus brief at 15-16.
[24] Proposed Br. at 15.
[25] Proposed Br. at 16.

12

When a plaintiff's conduct falls within the plain text – 'keeping' and 'bearing' – the burden is *solely* on the government to justify its regulations. It does not shift back to the individual. The government alone must prove that its firearm regulations are consistent with the plain text of the Second Amendment. *Bruen*, at 2126, 2129-30.

Everytown continues to mislead the Court with its reference to the Supreme Court's later practice of "liquidating" indeterminate or unsettled meaning. ["But it emphasized that, conversely, "a regular course of practice can liquidate [and] settle the meaning of disputed or indeterminate terms [and] phrases in the Constitution."].[26]

What Everytown failed to include was the next paragraph in *Bruen* where the Court declared, "But to the extent later history contradicts what the text says, the text controls…liquidating indeterminacies in written laws is far removed from expanding or altering them" thus, "post-ratification adoption or acceptance of laws *that are inconsistent* with the original meaning of the constitutional text *obviously cannot overcome or alter that text*." *Bruen*, at 2137 (cleaned up) (citations omitted) (emphasis added).

Laws enacted "75 years after the ratification of the Second Amendment" do not provide as much insight into the original meaning as earlier sources. *Id.*

---

[26] Proposed Br. at 13.

13

Everytown's theories are so disconnected from existing Supreme Court law that its brief is not only *un*helpful – it's harmful to this Court's understanding and determination of Second Amendment challenges under *Heller, McDonald,* and *Bruen*.

Everytown's aversion to the rule of law should not be entertained by this Court, which is bound to adhere to Supreme Court decisions and underlying analysis. Everytown's painful contortions of the *Bruen* opinion are unsound – legally and otherwise.[27, 28]

**VII. Appellees Are Well-Represented and Have No Need for 'Assistance'**

The adequacy of Appellees' representation has not been questioned, nor can it be. New York City and New York State are powerhouse governments with more than sufficient representation by the New York City Law Department and the New York State Attorney General's Office to adequately address the burden of justifying the challenged regulations.

Everytown has not claimed to have a "direct interest in another case" the outcome of which could be affected by this appeal. *Scheidler*, 223 F.3d at 617.

---

[27] *C.f., Rogers v. Grewal*, 140 S. Ct. 1865, 1869, 207 L. Ed. 2d 1059 (2020) (Thomas, J. dissenting from denial of certiorari to determine whether New Jersey's "near-total prohibition on carrying a firearm in public violates his Second Amendment right to bear arms") two years before the *Bruen* decision ("In short, it would take serious linguistic gymnastics - and a repudiation of this Court's decision in *Heller* -to claim that the phrase "bear Arms" does not extend the Second Amendment beyond the home.").

[28] It should not be lost on this Court that *Bruen* declared unconstitutional another post-ratification firearm regulation created by New York State in 1911.

14

And Everytown's proposed amicus brief reiterates the arguments made by the State and the City, offering no new or unique perspective. [29]

The Supreme Court considered – and rejected – Everytown's input when deciding *NYSRPA v. Bruen*[30] - and this Court should follow suit.

## CONCLUSION

The motion of Everytown for Gun Safety for leave to file an amicus brief should, most respectfully, be denied.

Dated: October 6, 2023
      Scarsdale, New York

                              The Bellantoni Law Firm, PLLC
                              *Attorneys for Appellants*

By: *Amy L. Bellantoni*
      Amy L. Bellantoni
      2 Overhill Road, Suite 400
      Scarsdale, New York 10583
      abell@bellantoni-law.com

---

[29] See, e.g., *King v. Amazon.com Servs. LLC*, No. 22CV01479DGSJB, 2022 WL 17083273, at *5 (E.D.N.Y. Nov. 18, 2022) (denying leave to file amicus brief where each of the parties was represented by able counsel and the court concluded that the proposed amicus curiae briefs did not assist the court).
[30] https://www.supremecourt.gov/DocketPDF/20/20-843/193256/20210921153701519_20-843%20bsac%20Bruen%20Everytown%20Amicus%20Brief.pdf

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2016 and, according to that software, it contains 3504 words, not including the cover, Table of Authorities, Table of Contents, or this Certificate of Compliance.

Dated: October 6, 2023

*Amy L. Bellantoni*
Amy L. Bellantoni