# 23-365

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUT

---

JASON FREY, BRIANNA FREY, JACK CHENG, WILLIAM SAPPE,

*Plaintiffs-Appellants,*

v.

NEW YORK CITY, NEW YORK, KEECHANT SEWELL, in her Official Capacity, STEVEN NIGRELLI, in his Official Capacity,

*Defendants-Appellees,*

KEVIN P. BRUEN, Acting Superintendent of the New York State Police, in his Official Capacity, DERMOT SHEA, in his Official Capacity as NYPD Police Commissioner,

*Defendants.*

---

On Appeal from the United States District Court for the Southern District of New York

---

## APPELLANTS' OPPOSITION TO THE METROPOLITAN TRANSPORTATION AUTHORITY'S MOTION TO FILE AN AMICUS CURIAE BRIEF

---

Amy L. Bellantoni
The Bellantoni Law Firm, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

October 6, 2023

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................. i

Brief Summary of the Appeal ............................................................................... 1

Standard for Considering Leave to File Amicus Brief ......................................... 2

I. The Transportation 'Regulation' is an Outright Ban.............................. 4

II. 'Public Safety' Was Flatly Rejected By The Supreme Court As A
    Justification For Firearm Regulations.................................................... 7

III. The MTA – A Government Actor – Has 'No Duty to Protect' ........... 10

IV. The MTA's Amicus Brief Is A Redundancy of Appellees' Briefs .................. 12

V. Appellees Are Well-Represented and Have No Need for 'Assistance' ........... 13

CONCLUSION .................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*,
  2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) ...................................................... 3

*Balistreri v Pacifica Police Dept.*,
  901 F2d 696 (9th Cir 1988) ................................................................................ 10

*Barker v. Wingo*,
  407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ......................................... 9

*Bowers v. DeVito*,
  686 F.2d 616 (7th Cir. 1982) .............................................................................. 10

*D.C. v. Heller*,
  554 U.S. 570 (2008) ................................................................................. 4, 5, 8, 9

*Genao v. Bd. of Educ. of City of New York*,
  888 F. Supp. 501 (S.D.N.Y. 1995) ..................................................................... 10

*Hudson v. Michigan*,
  547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) ....................................... 9

*Ketchum v County of Alameda*,
  811 F2d 1243 (9th Cir 1987) .............................................................................. 10

*King v. Amazon.com Servs. LLC*,
  2022 WL 17083273 (E.D.N.Y. Nov. 18, 2022) ................................................. 13

*Kircher v. City of Jamestown*,
  74 N.Y.2d 251, 544 N.Y.S.2d 995, 543 N.E.2d 443 (1989) .............................. 10

*Mapp v. Ohio*,
  367 U.S. 643 .................................................................................................. 9, 10

*Martinez v. California*,
  444 U.S. 277 (1980) ........................................................................................... 10

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) ................................................................................ 6, 9

*Miranda v. Arizona*,
  384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ................................... 9

*N. Sec. Co. v. United States*,
  191 U.S. 555 (1903) ........................................................................................ 3

*Nat'l Org. for Women, Inc. v. Scheidler*,
  223 F.3d 615 (7th Cir. 2000) .................................................................. 3, 13

*Rozenfeld v. MTA Bus Co.*,
  2015 WL 1174768 (S.D.N.Y. Mar. 16, 2015) ............................................. 10

*Ryan v. C.F.T.C.*,
  125 F.3d 1062 (7th Cir. 1997) ....................................................................... 2

*Strasser v. Doorley*,
  432 F.2d 567 (1st Cir. 1970) ..................................................................... 3, 4

*U.S. v. Microsoft Corp.*,
  2002 WL 319139 (D.D.C. Feb. 28 2002) ....................................................... 2

*United States v. Cruikshank*,
  92 U.S. 542, 23 L.Ed. 588 (1876) .................................................................. 5

*United States v. Gotti*,
  755 F. Supp. 1157 (E.D.N.Y. 1991) .............................................................. 4

*United States v. Leon*,
  468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) .................................. 9

*United States v. Yaroshenko*,
  86 F. Supp. 3d 289 (S.D.N.Y. 2015) ............................................................. 3

**Rules**

Federal Rule of Appellate Procedure 29 ................................................................. 2

Plaintiffs-Appellants oppose the motion of The Metropolitan Transportation Authority ("MTA") requesting leave to file a brief as amicus curiae in support of Defendants-Appellees.

The thrust of the MTA's argument is that public safety justifies banning the peaceable possession of firearms for self-defense in public transportation – a view flatly rejected by the Supreme Court in *Heller, McDonald,* and *Bruen.*

Further, the adequacy of Appellees' representation has not been questioned, the MTA has not claimed to have a "direct interest in another case" the outcome of which could be affected by this appeal, and its proposed amicus brief offers no more than a reiteration of the arguments made by the State and the City, offering no new or unique perspective to this Court. For the reasons below, the MTA's motion should be denied.

### *Brief Summary of the Appeal*

This an interlocutory appeal challenges the district court's denial of Appellants' motion to preliminarily enjoin New York State firearm regulations that conflict with the text, history, and tradition of the right to possess and carry weapons for self-defense, as protected by the Second Amendment.

Specifically, Appellants challenge provisions of the Concealed Carry Improvement Act (CCIA) that **ban the right to peaceably carry firearms** for self-

1

defense in Times Square[1], the Metropolitan Transportation Authority subway and train cars[2] (public transportation), in public parks[3], theaters[4], and restaurants with on-premise alcohol consumption[5].

Appellants also challenge New York's ***ban on the open carriage of handguns*** and the ***geographical ban*** for individuals with NYS concealed handgun licenses to carry concealed inside of New York City (the "City").[6]

### *Standard for Considering Leave to File Amicus Brief*

Federal Rule of Appellate Procedure 29 permits the filing of an amicus brief only by leave of court where one or more parties does not consent to its filing.

Appellants do not consent to the filing of the MTA's amicus brief.

"In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, [ ] judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal." *U.S. v. Microsoft Corp.*, No. 98-1232(CKK), 2002 WL 319139, at *3 (D.D.C. Feb. 28 2002) (quoting *Ryan v. C.F.T.C.*, 125 F.3d 1062, 1064 (7th Cir. 1997)).

---

[1] Penal Law § 265.01-e2(t).
[2] Penal Law § 265.01-e2(n).
[3] Penal Law § 265.01-e2(d).
[4] Penal Law § 265.01-e2(p).
[5] Penal Law § 265.01-e2(o).
[6] Penal Law § 400.00(6).

2

Although judges have wide discretion to permit a nonparty to submit an amicus brief, see *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000), courts "should go slow in accepting" an amicus brief absent consent from all the parties. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); see also *N. Sec. Co. v. United States*, 191 U.S. 555, 556 (1903) (Fuller, C.J., in chambers).

Following the Seventh Circuit, the Southern District of New York has put forth a useful litmus test for when an amicus brief is useful: (i) when they are of aid to the court and offer insights not available from the parties; (ii) when a party is not represented competently or is not represented at all; (iii) when the amicus has an interest in some other case that may be affected by the decision in the present case; or (iv) when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (cases cited).

Otherwise, leave to file an amicus curiae brief should be denied. *Id.*

An amicus curiae proves true to its name as a "friend of the court" when it offers a fresh perspective on an unsettled question of law that the actual parties to the litigation have not fully addressed. *United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290–91 (S.D.N.Y. 2015).

The proposed Amicus Brief of The Metropolitan Transportation Authority meets none of these standards.

As Chief Judge Aldrich cautioned in *Strasser v. Doorley*, it "may be thought particularly questionable" for the court to accept an amicus when it appears that the parties are well represented and that their counsel do not need supplemental assistance and where the joint consent of the parties to the submission by the amicus is lacking. That observation is precisely applicable here. *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991) quoting, *Strasser v. Doorley*, 432 F.2d 567 **I.**

## I. The Transportation 'Regulation' is an Outright Ban

While the MTA supports the ability of New York City and New York State to 'regulate' the carrying of firearms, it fails to recognize that Penal Law § 265.01-e2(n) is an **outright firearms ban on public transportation**.

As we saw in *Heller,* bans on the right to keep and/or bear Arms are unconstitutional *per se* because the plain text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *D.C. v. Heller* 554 U.S. 570, 592 (2008).

> This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."

4

> As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."

*Heller*, at 592 (emphasis supplied).

The *Bruen* Court rejected New York State's defense of the now-stricken "proper cause" requirement as a "sensitive places" restriction where the government may lawfully disarm law-abiding citizens including all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." *Bruen*, at 2133 quoting New York State's Brief at 34.

The Court noted that while people sometimes congregate in "sensitive places" where law enforcement professionals are usually presumptively available, expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly.

> Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below.
>
> Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a "sensitive place" simply because it is crowded and protected generally by the New York City Police Department.

*Bruen*, at 2133–34 (cleaned up).

5

The Court rejected the idea that the Second Amendment held any less force and effect in "crowded" areas and cities and declared that "there is no historical basis" for such a regulation.

The public transportation ban not only bans people from self-defense on public transportation – it bans them from carrying a firearm for self-defense from their front door to the public transportation (because where would they store their firearm as they entered MTA property?), while on public transportation, everywhere they do when they reach their destination, on their return trip, when they exit public transportation, and everywhere they go before arriving back home. For commuters, that means *every day, all day long* they are forced to remain unarmed *everywhere* they go until they return home at night. At the very least, for a regular commuter, five out of every 7 days, their ability to protect themselves outside of their home is terminated.

The MTA offers no new or insightful information for this Court; the Supreme Court has already denounced laws that "eviscerate the general right to publicly carry arms for self-defense[7]," which is the effect – and intention -- of the CCIA, including the public transportation ban.[8]

---

[7] *Bruen*, at 2134.
[8] To the extent that the MTA compares itself to a government building (citing the City's Brief) [Proposed Br. at 8-10], people may go their entire life without entering a government building – but the majority of New Yorkers utilize public transportation as part of their daily living. Adopting the MTA's logic, every public street, roadway, and land would be off-limits to Second Amendment-protected activity, notwithstanding that the First Amendment may be freely exercised

6

## II. 'Public Safety' Was Flatly Rejected By The Supreme Court As A Justification For Firearm Regulations

The thrust of the MTA's position is that billions of people ride thousands of square miles of their transportation network and, therefore, everyone should be stripped of their right to carry a handgun to defend their life from a violent attacker.

Essentially, every New Yorker must remain vulnerable and unarmed in a city with increasing and unfettered violence, to be raped, stabbed, and shot at will by violent criminals who couldn't care less that the MTA is a "gun free zone." Quite the opposite: "gun free" is a dog whistle for criminals because they know that they can prey on innocent people all day long without any fear of armed resistance.

But public safety is not a 'new societal concern' – and it was flatly rejected by the Supreme Court as a justification for firearm regulations and this Court will find no benefit from supplemental briefing on that issue.

Modern societal concern about public safety are the same concerns that the drafters encountered when ratifying the Second Amendment in 1791.[9]

---

on any public street, sidewalk, and all public transportation. The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees. *Bruen*, at 2156 quoting, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010) (plurality opinion).What's more, *public property* is just that – the *public's*, not the government's.

[9] "Like that dissent in *Heller*, the real thrust of today's dissent is that guns are bad and that States and local jurisdictions should be free to restrict them essentially as they see fit. That argument was rejected in *Heller*, and while the dissent protests that it is not rearguing *Heller*, it proceeds to do just that. *Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun….Today, unfortunately, many Americans have good reason to fear that they will be

7

*Bruen* instructs that the historical inquiry is fairly straightforward when a challenged regulation addresses a general societal problem that has persisted since the 18th century. The lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is *inconsistent* with the Second Amendment. *Bruen*, at 2131.

The societal concern here -- public safety -- was balanced and rejected in favor of codifying the individual right to possess and carry Arms in the Second Amendment, which further declared that the right "shall not be infringed."

> The Second Amendment is the very product of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense.
>
> It is this balance—struck by the traditions of the American people—that demands our *unqualified deference*.

*Bruen*, at 2131 quoting, *D.C. v. Heller*, 554 U.S. 570, 635 (2008) (cleaned up) (emphasis added).

*Heller* rejected the view that 'guns are bad so state and local jurisdictions should be free to restrict them essentially as they see fit.' *Bruen*, at 2160–61 (Alito, J. concurring) (cleaned up).

---

victimized if they are unable to protect themselves. And today, no less than in 1791, the Second Amendment guarantees their right to do so." *Bruen*, at 2160–61 (Alito, J. concurring).

8

As Justice Alito observed in *Bruen*,

> "*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun….
>
> Today, unfortunately, many Americans have good reason to fear that they will be victimized if they are unable to protect themselves. And **today, no less than in 1791, the Second Amendment guarantees their right to do so**." *Id.* (emphasis added).

In *McDonald*, the Supreme Court recognized that the right to keep and bear arms is "not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, at 783 citing:

> *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) ("The exclusionary rule generates 'substantial social costs,' *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which sometimes include setting the guilty free and the dangerous at large"); *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (reflecting on the serious consequences of dismissal for a speedy trial violation, which means "a defendant who may be guilty of a serious crime will go free"); *Miranda v. Arizona*, 384 U.S. 436, 517, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Harlan, J., dissenting); *id.*, at 542, 86 S.Ct. 1602 (White, J., dissenting) (objecting that the Court's rule "[i]n some unknown number of cases ... will return a killer, a rapist or other criminal to the streets ... to repeat his crime"); *Mapp v. Ohio*, 367 U.S. 643, 649.[10]

---

[10] The significant, and oft ignored difference, is that the Second Amendment protects the *lawful right* to self-defense, but the exclusionary rule protects the *criminals*.

9

The MTA cites no case in which the Supreme Court has "refrained from holding that a provision of the Bill of Rights is binding on the States on the ground that the right at issue has disputed public safety implications." *Ibid.*

The MTA's public safety based arguments are improperly made and, therefore, of no value to this Court's consideration of this appeal.

### III. The MTA – A Government Actor[11] – Has 'No Duty to Protect'

The government has no general duty to protect any individual person. *See, e.g., Genao v. Bd. of Educ. of City of New York*, 888 F. Supp. 501, 508 (S.D.N.Y. 1995) citing, *Kircher v. City of Jamestown*, 74 N.Y.2d 251, 256, 544 N.Y.S.2d 995, 543 N.E.2d 443 (1989); see also, *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband); *Martinez v. California*, 444 U.S. 277, 284-85 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Put differently, every individual is responsible for protecting their life from personal harm and danger, both at home and in public.

---

[11] Courts in this district have held that public benefit corporations like MTA Bus are state actors in the context of Section 1983 claims. *Rozenfeld v. MTA Bus Co.*, No. 13 CIV. 4847 KPF, 2015 WL 1174768, at *4 (S.D.N.Y. Mar. 16, 2015).

10

North America's 'largest public transportation network' is a government actor. The MTA cleverly professes its "statutory duty" to provide safe transportation services, it fails to cite any statute. Nevertheless, that duty does not encompass any duty to protect any specific individual, including Appellants, from violent criminal acts. Nor does the MTA profess to assume that duty in its brief. So, the 'safety' of its passengers does not, at all, rely on disarming individuals who seek to peaceably carry a firearm for self-defense.

The ban of firearms on public transportation does not eliminate crime nor does it prevent criminals from using transportation while armed with firearms – or other weapons. It is already illegal in New York State (and City) to possess a handgun without a license.[12] An unlicensed person carrying a handgun *anywhere* in New York State – is guilty of a felony. And criminals do not apply for licenses to lawfully carry a handgun.

The only people negatively affected by the firearm ban are licensed gun owners. And Gov. Hochul passed the law to specifically target licensed gun owners – the unlicensed and those disqualified from firearm possession were *already* banned from possessing firearms. Gov. Hochul emphasized implementing

> a public education campaign "so that people who do now **legally possess** (handguns) now under the Supreme Court ruling will understand that there are rules of the road that you must follow and

---

[12] Penal Law § 265.03 (Class C Felony).

11

>law enforcement will be making sure that you do follow these [rules]. That is what we're doing."[13]

Put differently, the licensed individuals who legally carried a handgun for self-protection on a daily basis prior to the enactment of the CCIA - while among the 15 million people across 5,000 square miles in the presence of the millions of students on MTA property[14] – are now *felons* under the State's retaliatory 'rules of the road' if they engage in the same peaceable carriage of a firearm for self-defense.

The MTA fails to cite one example where any licensed handgun owner prior to the enactment of the CCIA committed a crime on its property. The peaceable carriage of handguns pre-CCIA was largely unremarkable.[15]

**IV. The MTA's Amicus Brief Is A Redundancy of Appellees' Briefs**

To the extent that the MTA mentions history at all, it either cites to Appellees' Briefs directly or echoes their arguments.[16] The MTA provides no independent historical analysis relevant or helpful to this Court's determination of text, history, and tradition[17] -- a factor that also warrants denial of the MTA's motion.

---

[13] https://www.youtube.com/watch?v=gC1L2rrztQs (13:38).
[14] Proposed Br. at 1, 5.
[15] The MTA refers to an individual who opened fire in a subway car striking ten passengers – but what the MTA describes is a crime, and not protected activity under the Second Amendment. [Proposed Br. at 7]. The MTA's inability to distinguish between the two renders its perspective questionable and unhelpful to this Court.
[16] Proposed Br. at 7-13.
[17] Proposed Br. at 7-13.

12

**V. Appellees Are Well-Represented and Have No Need for 'Assistance'**

The adequacy of Appellees' representation has not been questioned, nor can it be. New York City and New York State are powerhouse governments with more than sufficient representation by the New York City Law Department and the New York State Attorney General's Office to adequately address the burden of justifying the challenged regulations.

MTA has not claimed to have a "direct interest in another case" the outcome of which could be affected by this appeal. *Scheidler*, 223 F.3d at 617.

And the MTA's proposed amicus brief reiterates the arguments made by Appellees, offering no new or unique perspective[18] and warranting denial of its motion.

---

[18] See, e.g., *King v. Amazon.com Servs. LLC*, No. 22CV01479DGSJB, 2022 WL 17083273, at *5 (E.D.N.Y. Nov. 18, 2022) (denying leave to file amicus brief where each of the parties was represented by able counsel and the court concluded that the proposed amicus curiae briefs did not assist the court).

13

## CONCLUSION

The motion of The Metropolitan Transportation Authority for leave to file an amicus brief should, most respectfully, be denied.

Dated: October 6, 2023
      Scarsdale, New York

                                      The Bellantoni Law Firm, PLLC
                                      *Attorneys for Appellants*

    By:   *Amy L. Bellantoni*
                  Amy L. Bellantoni
                  2 Overhill Road, Suite 400
                  Scarsdale, New York 10583
                  abell@bellantoni-law.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2016 and, according to that software, it contains 3204 words, not including the cover, Table of Authorities, Table of Contents, or this Certificate of Compliance.

Dated: October 6, 2023

            *Amy L. Bellantoni*
            Amy L. Bellantoni